JOHN W. McGILVERY & others *vs.* FREDERICK W. CAPEN & another.

A charter party "for a voyage or voyages to any ports or places" for a certain time, and if that time expires while the vessel is on a voyage, then until her return to an Atlan‑ tic port in the United States, by which the charterers agree to pay freight at a cer‑ tain rate per ton for each month the vessel is employed by them, and at the same rate for any part of a month, half to be paid at the end of every six months, and the balance to the master at each port of discharge, is a charter for a specified time; and if the vessel is lost in the course of a voyage, freight is due to the time of the loss.

ACTION OF CONTRACT to recover for the use and employment of the Barque Fanny Buck, from the 21st of October 1853, when the vessel was delivered into the possession of the defend‑ ants, to the 29th of December 1853, when she was wrecked upon Race Point, Cape Cod, and afterwards abandoned to the insurers, and paid for by them as a total loss.

The plaintiffs claimed payment at the rate fixed by a charter party, dated September 23d 1853, by which they chartered the barque to the defendants "for a voyage or voyages to any ports or places to which the said parties of the second part may think fit to send said barque, (all unlawful, extrahazardous or unusual voyages excepted,) for and during the term of twelve months from the time she shall be delivered into their possession, and afterwards for such further time as said party of the second part may elect, not exceeding eight months, or twenty months in all, unless said barque shall be on a voyage at the end of twenty months, in which case the charter is to continue unti‑

the voyage shall be completed by a return to an Atlantic port in the United States ; " and by which the defendants agreed to pay the plaintiffs, " for the charter or freight of the said vessel during the voyage aforesaid, in manner following, that is to say : Two dollars per calendar month for each and every ton register of the vessel, United States measurement, during the time she may be employed or remain in possession of the party of the second part, and at the same rate for any part of a month ; payments to be made as follows : at the end of every six months from the commencement of the charter, the party of the second part to pay in Boston to the party of the first part, or the agent of said vessel, three months' charter ; the balance of the charter to be paid the master, as it becomes due, on discharge of the barque at the several ports she may discharge at ; allowance always being made for stipulated payments in Boston, in funds equal to the United States currency, with the current rate of exchange." *Thomas,* J. reserved the case for the consideration of the full court,

*W. Brigham,* for the plaintiffs.

*R. Choate & E. Bangs,* for the defendants, cited *Towle* v. *Kettell,* 5 Cush. 18 ; *Brown* v. *Hunt,* 11 Mass. 45 ; *Locke* v. *Swan,* 13 Mass. 76 ; *Coffin* v. *Storer,* 5 Mass. 252 ; *Caze* v. *Baltimore Ins. Co.* 7 Cranch, 358 ; *Welch* v. *Hicks,* 6 Cow. 504 ; *The Nathaniel Hooper,* 3 Sumner, 542 ; Parsons Merc. Law, 350, 351.

This case was decided at March term 1857.

BIGELOW, J. By the terms of this charter party, the vessel was hired " for and during the term of twelve months " absolutely, and for such further time as the defendants might " elect, not exceeding eight months, or twenty months in all," unless, at the expiration of the twenty months, the vessel should be " on a voyage, in which case the charter is to continue until the voyage shall be completed by a return to an Atlantic port in the United States." It was therefore a hiring of the vessel for a specified time. The charter money was agreed to be paid as follows : " Two dollars per calendar month for each and every ton register of the vessel during the time she may be employed or remain in possession of the " defendants, " and at the same

rate for any part of a month ; payments to be made at the end of every six months from the commencement of the charter. It is clear therefore that the terms of the charter and the payments of the charter money were wholly irrespective of any specified voyage or voyages.

The case is not like *Brown* v. *Hunt*, 11 Mass. 45. The char-ter party in that case was for distinct voyages, which were stipu-lated to be performed. Nothing was said as to the time when the freight was to be reckoned as earned and due. It was held to be due upon the performance of each distinct voyage, but that the performance of each voyage was a condition precedent to the payment of freight during the time she was employed on such voyage.

Nor is the case of *Locke* v. *Swan,* 13 Mass. 76, like the case at bar. The charter in that case was for distinct voyages from Boston to the coast of Africa and back to the United States. It was there held, that the freight was divisible, upon the basis of the two voyages specified in the charter party, and that the vessel having been captured on the homeward voyage, no freight was payable therefor.

The case of *Towle* v. *Kettell,* 5 Cush. 18, was a charter for a specified voyage for an entire sum ; and it was held that no freight was earned until the whole voyage had been performed.

The case of *Coffin* v. *Storer,* 5 Mass. 252, like the leading case of *Luke* v. *Lyde,* 2 Bur. 882, only determined that where a ves-sel was hired for a specific voyage, and was lost by perils of the sea without fault of the master, and the goods were afterwards accepted by the owner, *pro rata* freight was due.

These cases, therefore, were all decided upon agreements to perform certain specified voyages. And although in some of them the freight was agreed to be paid at a certain rate per month, it was in all of them dependent on the performance of the stipulated voyage or voyages.

An agreement to hire a vessel for a voyage, and pay therefor at a certain rate per month, is equivalent to an agreement to pay so much a month for the voyage. The voyage must be performed, or no freight is earned. But in this case the terms

of the charter are widely different. The vessel is hired for a term of time, and not for a voyage or voyages ; and the charter money is to be paid for the time the vessel is used and employed. Time is therefore the essence of the agreement, upon which alone the payment of the charter money is made to depend. Such was clearly the intention of the parties; and in construing instruments of this nature, the ordinary rule of interpretation, by which full effect is to be given to the intent of the parties, is applicable. Abbott on Ship. 266. *Crozier* v. *Smith*, 1 Scott N. R. 345, and 1 Man. & Gr. 413.

The case at bar is very similar to *Havelock* v. *Geddes*, 10 East, 555. In that case the vessel was hired for a period of time, at a certain freight for each calendar month, to be paid at particular times therein mentioned. The vessel was lost before the expiration of the term of the charter party. It was there urged that the stipulations in the charter party, which fixed the times for paying the freight, made the right to the freight payable at those times depend on the then safety of the vessel. But this argument did not prevail; and it was held, that each month's freight was fully earned and became completely due at the end of each month, and that only the actual payment was postponed for the convenience of the hirer. This is quite decisive of the present case. The true rule is, that whenever the payment of freight under a charter is to be made by time only, it is due and earned at each interval specified, unless otherwise expressly agreed. In such case, each of the stipulated periods of payment, if such are provided for in the charter party, is to be considered as if it were a separate voyage. *Crozier* v. *Smith*, 1 Scott N. R. 338, and 1 Man. & Gr. 407.

In the case at bar, the agreement was not only to pay a certain sum per month during the time the vessel was employed or remained in possession of the defendants, but " at the same rate for any part of a month." Under this stipulation we think the freight was earned and due up to the time of the loss of the vessel, and to that extent was not dependent upon her safety or upon the performance of the voyage on which she was bound at the time of the loss. Such was the plain intent of the parties to the charter party.               *Judgment for the plaintiffs.*